**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **ANTHONY WATSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-11-2491** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Anthony Watson, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 18) and ("Commissioner's Motion") (ECF No. 24).  The Court has reviewed the motions, Commissioner's Motion for Summary Judgment related memoranda, and the applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court hereby GRANTS Plaintiff's Motion, and DENIES Commissioner's Motion.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on December 22, 2008.  R. 124.  The Commissioner denied Plaintiff's claim on first review on March 9, 2009, R. 73-75, and on reconsideration on September 2, 2009, R. 78-79.  A hearing was held before an Administrative Law Judge ("ALJ")

on September 21, 2010.  R. 33-65.  On October 4, 2010, the ALJ issued a written decision

concluding that Plaintiff was not disabled under the Social Security Act from December 22,

2008, through the date of the decision.  R. 17-30.

     The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20

C.F.R. § 404.1520 (2010), and further explained below.  *See*, *infra*, Standard of Review.  At the

first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since

December 22, 2008, the alleged onset date.  R. 19.  At the second step, the ALJ determined that

Plaintiff has severe impairments, including mild, intermittent reactive airway disease, obesity,

borderline intellectual functioning, and heroin abuse in remission with current methadone

treatment.  *Id*.  The ALJ determined that Plaintiff's Hepatitis C did not qualify as a severe

impairment.  *Id*.  At the third step, the ALJ determined that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  R. 19-21.  At the fourth step, the

ALJ determined that Plaintiff retained the residual functional capacity to perform medium work,

except that he is limited to carrying out simple tasks in 2-hour increments, and to having only

occasional interaction with coworkers, supervisors, and the general public.  R. 21-24.  The ALJ

determined that Plaintiff had no past relevant work experience.  R. 24.  At the fifth step, the ALJ

determined that considering Plaintiff's residual functional capacity, age, education, and work

experience, "there are jobs that exist in significant numbers in the national economy that the

claimant can perform."  R. 24.  As a result, the ALJ concluded that Plaintiff has not been under a

disability, as defined in the Social Security Act, from December 22, 2008 through the date of the

decision.  R. 25.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council.  R. 11.  The Appeals Council denied Plaintiff's request on July 12, 2011, making the ALJ's decision final and appealable.  R. 1-4.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2006).  The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345.  The ALJ, not the Court, has the responsibility to make findings of fact and resolve

evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a) (2010). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv). If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work. 20 C.F.R. § 416.920(a)(4)(v). If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's condition, Pl.'s Br. 34, for the following four reasons:

> 1) The ALJ lacked substantial evidence for the conclusion that Plaintiff does not meet Listings 12.05(B) and 12.05(C) for mental retardation;
>
> 2) The ALJ erred by failing to give controlling weight to Plaintiff's treating physician, Dr. Renthal[1];
>
> 3) The hypothetical questions posed by the ALJ to the vocational expert were not supported by substantial evidence and lacked sufficient specificity; and
>
> 4) The vocational expert's testimony is inconsistent with the Dictionary of Occupational Titles.

The Court agrees with Plaintiff's first argument, and therefore it need not reach the other three.

## I.  The ALJ Lacked Substantial Evidence For Rejecting Plaintiff's IQ Score Assigned By The SSA Consultative Examiner Psychologist.

Plaintiff argues that it was improper for the ALJ to reject the IQ score of 53 assigned by Dr. Edward Ansel, a Social Security Administration ("SSA") consultative examiner and psychologist.  Commissioner relies on *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012), in which the Fourth Circuit addressed for the first time whether an ALJ may reject an IQ score that is the only score in the record.  Def.'s Br. 13.  The court held that an IQ score may be rejected when it

---

[1] Plaintiff's Motion refers to this doctor as "Doctor Lisa Reichard," Pl.'s Br. 23, while the ALJ refers to her as "Dr. Renthal."  R. 24.  Her name is nearly illegible on the sole record she prepared.  R. 294.  For the sake of consistency, the Court will use the same name as in the ALJ's opinion.

is inconsistent with the evidence in the record of a claimant's actual functioning and the conclusions of treating psychiatrists.  *Hancock*, 667 F.3d at 474-75.  The court relied on cases in other federal circuits concluding that a lone IQ score could be rejected under those circumstances.[2]  *Id*.  In *Hancock*, the claimant had been assigned a full scale IQ of 63 by the consultative examiner.  667 F.3d at 473.  In his report, the examining psychologist did not attest to the validity of the scores or opine that the claimant gave her best effort.[3]  *Id.*  The ALJ had found no deficits in adaptive functioning, and the claimant had "worked several jobs and performed a variety of tasks which would be expected to be beyond the capacity of a mentally retarded person."  *Id*. at 475-76.  The court noted that the claimant "has the ability to shop, pay bills, and make change; that she takes care of three small grandchildren at a level of care that satisfies the Department of Social Services; that she does the majority of her household's chores, including cooking and baking; that she is attending school to obtain a GED; and that she does puzzles for entertainment."  *Id*. at 476.  Therefore, it found substantial evidence for the ALJ's conclusion that the claimant's IQ score was inconsistent with her level of functioning.

Here, Dr. Ansel evaluated Plaintiff at the ALJ's request on August 8, 2010.  R. 320.  He applied the Wechsler Adult Intelligence Scale IV, which is the preferred intelligence test under the SSA regulations.[4]  R. 320.  He noted that Plaintiff was oriented and alert, "was cooperative

---

[2] *See Lax v. Astrue*, 489 F.3d 1080, 1086 (10th Cir. 2007) (approving an ALJ's rejection of an IQ score where psychiatrist noted that the claimant's "responses appeared unreliable" and was attempting to achieve low scores); *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003) (finding that an ALJ may reject scores inconsistent with the record, but that the ALJ lacked a basis for doing so where the claimant's activities were consistent with mental retardation); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998) (approving the ALJ's rejection of an IQ score where claimant was able to read, write, drive, cook, shop, and count money); *Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1991) (approving the ALJ's rejection of an IQ score where claimant had held a job as a truck driver and passed a written exam for a chauffeur's license).

[3] The regulations state that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Part 404 Subpart P, App. 1 § 12.00(D)(6)(a) (2010).

[4] *See* 20 C.F.R. Part 404 Subpart P, App. 1 § 12.00(D)(6)(c) ("The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series.")

throughout the testing procedures" and that "[t]he attained results are assumed to have yielded an accurate estimate of his current level of functioning." R. 320. He assigned Plaintiff a full-scale score of 53, in the 0.1 percentile and in the mild to moderate mentally retarded range. R. 321-22.

The ALJ gives three reasons for rejecting the IQ score:  (1) that no other treating or examining physician made diagnoses regarding Plaintiff's cognitive abilities, (2) that an opinion by treating psychiatrist Dr. Renthal suggested a lack of mental limitations, and (3) that Plaintiff's educational records were inconsistent with his IQ score. R. 23-24. However, with the exception of Dr. Renthal's report, the entire medical history in the record consists of emergency-room and hospital visits related to Plaintiff's physical ailments such as chest pain, hypertension, and asthma. R. 200, 214, 217, 225, 230, 232, 239, 259, 282, 295, 314, 318. None of these physicians were psychiatrists, and none of their reports assess Plaintiff's cognitive functioning. The psychiatrist, Dr. Renthal, did not directly address Plaintiff's IQ scores or his cognitive abilities. R. 294. She merely checked a box indicating that certain symptoms do not "cause substantial restrictions in his capacity for mental alertness, concentration, and persistence." *Id*. The report lacks any narrative notes, consists of a total of five words, does not indicate the nature of any treatment, and states that no testing on Plaintiff was performed.[5] R. 293-94. Finally, the educational records indicate that Plaintiff was in special education classes, participated in the KAPS program for students at risk of dropping out, dropped out of school in the tenth grade, and received almost entirely failing grades. R. 23, 188-91. The ALJ emphasizes that Plaintiff was enrolled in a few conventional classes (which he failed) and received a few passing grades in the

---

[5] The ALJ in fact rejected all of Dr. Renthal's other conclusions (which indicated that Plaintiff was disabled) because they were not adequately supported or explained. R. 24. *See* 20 C.F.R. § 416.927(d)(3) (2010) ("[T]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

seventh grade.  R. 23.  However, it is plain that Plaintiff's overall school record is one of failure

and unsatisfactory progress.  *See* R. 188-191.

The above factual findings by the ALJ are not sufficient as a matter of law to reject

Plaintiff's IQ score.  While in *Hancock* the court found that the claimant had held several jobs,

the ALJ here found that Plaintiff has no past relevant work, because his work history was

sporadic and consisted in only temporary jobs.[6]  R. 24.  While the *Hancock* claimant took GED

classes, the ALJ here found that Plaintiff is illiterate and that his reading, writing, and spelling

were on the first and second grade level.  *Id*.  While the *Hancock* claimant raised her

grandchildren and maintained a household, Plaintiff lives alone, has no driver's license, relies on

his father to pay bills, and relies on his siblings for household chores and yard work.  R. 22, 37-

40.  Claimant testified that he needs somebody to write instructions for him to give the bus driver

when he takes public transit, and that he cannot cook but rather eats cereal or relies on his sister

to cook for him.  R. 40, 49.  There is no evidence that Plaintiff has achieved the level of adaptive

functioning that the court in *Hancock* found sufficient to reject a sole IQ score.

This case is also distinguishable from the other federal appellate cases on which the

*Hancock* court relied.  In *Lax v. Astrue*, one doctor performing an IQ test "clearly renounced" the

scores because the claimant's effort was "minimal and inadequate," while another doctor

expressed an opinion that "the claimant was actually functioning at a higher range."  489 F.3d

1080, 1086 (10th Cir. 2007).  In contrast, here Dr. Ansel found that Plaintiff performed to his

capabilities on the IQ test, and no other doctor analyzed the score report.  R. 320.  In *Clark v.

Apfel*, the claimant was able to read and write, count money, had a driver's license, and did the

majority of the cooking, cleaning, and shopping for her household.  141 F.3d 1253, 1256 (8th

---

[6] *See* 20 C.F.R. § 416.965 (2010) ("If you have no work experience or worked only off-and-on for brief periods of time during the 15-year period, we generally consider that these do not apply.").

Cir. 1998).  Here, Plaintiff is illiterate, could not obtain a driver's license, and relies on others for household chores.  R. 22, 24, 37-40.  In *Muse v. Sullivan*, the claimant had held a job as a truck driver and passed a written chauffeur test, whereas here the ALJ found Plaintiff had no past relevant work and is illiterate.  925 F.2d 785, 789-90 (5th Cir. 1991); R. 24.  Finally, in *Popp v. Heckler*, the claimant had received an associate's degree, was close to completing a bachelor of science degree, and had actually taught high school algebra.  779 F.2d 1497, 1499 (11th Cir. 1986).

This case is analogous to *Markle v. Barnhart*, 324 F.3d 182 (3d Cir. 2003), also cited by the Fourth Circuit in *Hancock*.  667 F.3d at 474.  While acknowledging that an ALJ may reject scores that are inconsistent with the record, the court in *Markle* found that the ALJ had improperly done so.  324 F.3d at 187.  The court found that the claimant's  adaptive functioning was not inconsistent with mental retardation, despite his having dropped out in the tenth grade and obtained a GED, and the fact that he could read, write, do math, shop, and live independently.  *Id*. at 183, 187.  Further, the state medical agency consultant who concluded that the claimant did not meet the listing had not reviewed the IQ report, and "[t]here was no expert opinion of a psychologist or medical person to contradict [the] IQ findings."  *Id*. at 187.  The psychologist who administered the IQ test concluded that the scores were valid and did not qualify them or find them inconsistent with the claimant's demeanor.  *Id*.  Here, Plaintiff's functioning is considerably lower than that in *Markle*, and there is also no expert report contradicting the IQ testing.  Like in *Markle*, Dr. Ansel concluded that Plaintiff's IQ scores were accurate and did not qualify them in any way.  R. 320.  The ALJ cannot rely on "speculative inferences drawn from the record" to reject an IQ score which has not been called into question

by any psychologist or other expert, and which is not inconsistent with Plaintiff's level of

adaptive functioning.  *See Markle*, 667 F.3d at 187.

## II.  Given The ALJ's Factual Findings, Plaintiff Meets Listings 12.05(B) And 12.05(C) For Mental Retardation As A Matter Of Law.

Commissioner argues that Plaintiff failed to meet his burden of establishing all of the

elements of the mental retardation listings.  Def.'s Br. 12-18.  The structure of Listing 12.05 for

mental retardation is unique in that it contains an introductory paragraph with the diagnostic

criteria for mental retardation, which must be satisfied before applying paragraphs A through D.

20 C.F.R. Part 404 Subpart P, App. 1 § 12.00(A) (2010).  The listing reads in pertinent part:

> Mental retardation:  Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in
> adaptive functioning initially manifested during the developmental
> period; i.e., the evidence demonstrates or supports onset of the
> impairment before age 22.  The required level of severity for this
> disorder is met when the requirements in A, B, C, or D are
> satisfied.
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70
> and a physical or other mental impairment imposing an additional
> and significant work-related limitation of function . . . .

20 C.F.R. Part 404 Subpart P, App. 1 § 12.05.  Deficits in adaptive functioning can include

limitations in areas such as communication, self-care, home living, social/interpersonal skills,

use of community resources, self-direction, functional academic skills, work, leisure, health, and

safety.  *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536

U.S. 304, 309 n. 3 (2002)).  The Fourth Circuit has held that in the absence of any evidence of a

change in intellectual functioning, it must be assumed that a claimant's IQ has remained

relatively constant since before age twenty-two.  *Luckey v. U.S. Dept. of Health & Human*

*Services*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham v. Heckler,* 775 F.2d 1271, 1274

(4th Cir.1985)).  Further, it has held that life-long illiteracy and academic failure are evidence of

onset before the age of twenty-two.  *Id*. at 668-69; *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir.

1988).

The ALJ did not assess whether Plaintiff meets the diagnostic criteria in the introductory

paragraph to Listing 12.05, but rather disposed of the listing by rejecting Plaintiff's IQ scores.  R.

20.  However, the ALJ's own factual findings compel the conclusion that Plaintiff possesses

deficits in adaptive functioning.  The fact that Plaintiff is illiterate, failed and dropped out of

school, and has not been able to secure any relevant work by the age of forty-nine satisfies the

standard set forth in *Jackson*.  *See* 467 F. App'x at 217 (finding Plaintiff met the standard where

she was in special needs classes, dropped out of school in the tenth grade, and reads at a sixth-

grade level).  Although the ALJ characterized Plaintiff's deficits in activities of daily living and

social functioning as "moderate," it is uncontroverted that he possesses such deficits and that he

relies significantly on others for basic daily activities such as cooking and transportation.  R. 22,

37-40.

Commissioner also argues that Plaintiff did not establish deficits in intellectual

functioning before the age of twenty-two.  However, there is no evidence in the record to

controvert the Fourth Circuit presumption that a claimant's IQ remains relatively constant before

and after the developmental period.  Plaintiff's educational record of failed classes, enrollment in

special education, participation in the KAPS drop-out prevention program, and eventual

dropping out are sufficient evidence of an onset during childhood.  *See Maresh v. Barnhart*, 438

F.3d 897, 900 (8th Cir. 2006) (concluding that claimant's struggles in special education classes

and dropping out in the ninth grade were evidence of onset before age twenty-two); *Boyd v.

Astrue*, 746 F. Supp. 2d 688, 692 (E.D.N.C. 2010) ("Plaintiff's enrollment in special education

classes, her illiteracy, her poor performance in school, and her lackluster performance on achievement testing demonstrates deficits in adaptive functioning prior to age 22.").  Further, Plaintiff's illiteracy as a child and as an adult is evidence of onset before age twenty-two.  *See Turner*, 856 F.2d at 699 (finding a claimant's inability to read or write after ten years of schooling to be "a clear manifestation of mental retardation occurring before age twenty-two").  Finally, Dr. Ansel opined that Plaintiff's current level of intellectual functioning "has been the case since the developmental period."  R. 322.

Since the introductory paragraph of 12.05 is satisfied by the ALJ's factual findings, Plaintiff's valid IQ score qualifies him for Paragraph B of the listing ("[a] valid verbal, performance, or full scale IQ of 59 or less").  It also bears mention that even if Plaintiff's IQ score were *as much as seventeen points higher* than that assigned by Dr. Ansel, he would still meet the listing under Paragraph C because the ALJ found that Plaintiff has three other severe conditions which "have a significant effect on the claimant's ability to perform basic work activities."[7]  R. 19.  Considering that the Wechsler intelligence tests have a standard deviation of fifteen points, Plaintiff was well within the range of qualifying under the listings.  *See* 20 C.F.R. Part 404 Subpart P, App. 1 § 12.00(D)(6)(c).

## III.  Remand Is Unnecessary Because No Significant Question Of Fact Remains Once The Valid IQ Score Is Accepted.

It is within the Court's statutory authority to remand for a rehearing or to reverse the decision of the Commissioner.  42 U.S.C. § 405(g) (2006).  When the record does not contain substantial evidence to support a contradictory finding under the correct legal standard, it serves

---

[7] The three severe impairments that the ALJ found were Plaintiff's intermittent reactive airway disease, obesity, and heroin abuse in remission with methadone treatment.  R. 19.  The regulations state that the assessment of the "additional and significant work-related limitation of function" under Listing 12.05(C) is essentially a question of whether the additional impairment is "severe" as defined in §§ 404.1520(c) and 416.920(c).  20 C.F.R. Part 404 Subpart P, App. 1 § 12.00(A).

no purpose to remand the case to the Commissioner for further proceedings. *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974); *see also Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (finding authority to reverse without remand "when the Secretary's determination is in clear disregard of the overwhelming weight of the evidence").  This Court has found that where there is little or no likelihood that the Commissioner could adduce substantial evidence on remand to support a denial of benefits, reversal is the appropriate remedy. *Burkhart v. Apfel*, No. H-98-1725, 1999 WL 33136051, at *18 (D. Md. July 14, 1999); *Jones v. Schweiker*, 551 F. Supp. 205, 208-09 (D. Md. 1982); *see also Storck v. Weinberger*, 402 F. Supp. 603, 607-08 (D. Md. 1975) (stating that remand is inappropriate where the "possibility of the Secretary's establishing substantial evidence for a similar conclusion seems extremely doubtful").

    Here, the ALJ committed legal error in rejecting a sole IQ score that was not inconsistent with Plaintiff's actual level of functioning.  If this case were remanded, a finding of disability would be compelled unless the ALJ were to conclude that Plaintiff does not meet the diagnostic criteria for mental retardation in the introductory paragraph to Listing 12.05.  However, the ALJ's own findings of fact leave no significant doubt that Plaintiff meets these criteria.  Further, because of the ALJ's conclusion that Plaintiff has other severe impairments which significantly affect his ability to perform work activities, he would meet Listing 12.05 even if his IQ were as high as seventy.  Therefore, this case does not warrant remand, and the Court reverses the ALJ and enters judgment for Plaintiff.

## **CONCLUSION**

Based on the foregoing, the Court GRANTS Plaintiff's Motion and DENIES

Commissioner's Motion, and orders the Social Security Administration to calculate benefits past

due to Plaintiff.


January 9, 2013                                         _____/s/_____

                                                       Charles B. Day
                                                       United States Magistrate Judge

CBD/ISA